LEHIGH BUILDING CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6607.   Promulgated June 23, 1927.

1. The fair market value of a second mortgage received as a part consideration for the sale in 1919 of an apartment house determined from the evidence.

2. During the year 1919 the petitioner voted to its president a salary of $10,000, which amount it claimed as a deduction on its return for that year. The respondent allowed $2,500 and disallowed the remainder upon the ground that it was not a reasonable allowance for salary.or other compensation for services actually rendered. *Held*, that inasmuch as services rendered by the president of the corporation during the taxable year were not worth to exceed the amount allowed by the Commissioner as a deduction therefor, the Commissioner's action in this regard should be affirmed.

*John F. Malley, Esq.*, for the petitioner.
*J. W. Fisher, Esq.*, for the respondent. .

In this proceeding the petitioner seeks a redetermination of its liability for income and profits taxes for the year 1919, for which the Commissioner assessed a deficiency in the amount of $20,976.46. Of the amount so assessed the petitioner paid $9,627.58 and filed a claim for the abatement of the balance, amounting to $11,348.88. The Commissioner rejected the claim for abatement for the full amount and the whole thereof is involved herein.

Two errors are assigned: (1) The inclusion of a second mortgage for $47,500 at its face value, instead of a value at least $15,000 less than its face, in arriving at the amount of profit derived from the sale of a certain apartment house in 1919; and (2) the refusal of the Commissioner to allow $7,500 of an amount of $10,000 claimed as either a deduction or as part of the cost of the property, on account of compensation alleged to have been paid to Irving Judis, the petitioner's president.

FINDINGS OF FACT.

The petitioner is a New York corporation with its principal office in the City of New York. Subsequent to its incorporation in 1915, the petitioner bought a parcel of land at the southwest corner of 157th Street and St. Nicholas Avenue in the City of New York and erected thereon a six-story elevator apartment house, which was completed in 1916. In order to secure funds to erect the building, it gave a first mortgage to the Metropolitan Life Insurance Co., covering the property, for $210,000, which mortgage was to fall due on September 1, 1920, and bore interest at the rate of 6 per cent per

annum until the completion of the building, and at 5½ per cent thereafter.

In order to obtain the first mortgage, the Metropolitan Life Insurance Co. required the petitioner to purchase from it a piece of property for $85,000, which the petitioner immediately thereafter sold for only $66,500. This in effect amounted to the payment of a bonus of $18,500 to the insurance company. The latter also demanded as a prerequisite to the making of a loan the giving of a collateral bond by the petitioner's president guaranteeing the successful completion of the building. Ten thousand dollars would have been a reasonable compensation to have been paid for the execution of the bond.

On June 3, 1919, the petitioner sold the land and building to Hyman Auerbach and Louis Katz for a total consideration of $297,500, consisting of cash in the amount of $40,000, the assumption by the purchasers of the first mortgage of $210,000, and the giving by the purchasers of a purchase-money second mortgage in the amount of $47,500. The second mortgage bore interest from June 1, 1919, at the rate of 6 per cent per annum, payable December 1, 1920, and semiannually thereafter. The principal was payable in installments of $2,500 semiannually, beginning December 1, 1919, until June 1, 1924, at which time the balance of both principal and interest remaining unpaid became due and payable.

The fair market value of the second mortgage of $47,500 received by the petitioner in 1919 was $32,500.

The Commissioner computed the taxable profit on the sale by assuming that the fair market value of the second mortgage, as part of the consideration received, was its face value, i. e., $47,500, and by so doing increased the income of the petitioner by the amount of $15,000.

The only stockholders of the petitioner corporation were Irving Judis and his wife, Mary Judis. They were the only directors and officers. Irving Judis was the president.

The following is a part of the minutes of a "special meeting" of the directors of the petitioner held on December 16, 1919:

The president further reported that the installment due December 1, 1919, had been paid, and that there now remains due upon said mortgage the principal sum of $45,000, with interest thereon from December 1, 1919.

The president also reported that inasmuch as the corporation was indebted to Mrs. Judis in approximately the sum of $70,000, arrangements had been made whereby Mrs. Judis had agreed to accept from the corporation an assignment of said bond and mortgage for the consideration of $30,000, said consideration to be paid by charging the account of the corporation with Mrs. Judis with the said sum of $30,000. Mrs. Judis, who was present, confirmed the report of the president, and, on motion duly made and seconded, the officers

of the corporation were directed to execute a proper assignment of said bond and mortgage and to charge the account of Mrs. Judis with the corporation with the said sum of $30,000.

Mrs. Mary Judis addressed the meeting and referred to the success which had attended the conduct of the business of the corporation and stated that that success was due entirely to the efforts of the president of the corporation.

On motion of Mary Judis, seconded by Irving Judis, the salary of the president for the year 1919 was fixed at the sum of $10,000, said payment to be made by crediting the account of Mr. Judis with the corporation with the said sum of $10,000.

On December 27, 1919, the petitioner formally assigned the said second mortgage of $47,500 to Mary Judis, the assignment reading— " * * * in consideration of One Hundred ($100) Dollars, and other valuable considerations." The assignment was recorded in the Register's Office of the County of New York, State of New York, on December 29, 1919, in Liber 3111 of Mortgages, at page 5.

In the construction of the above-mentioned building, Irving Judis acted as the general contractor in addition to his ordinary duties as an officer. He actively superintended the erection of the building. The value of such services to the petitioner as general contractor alone (exclusive of his services as an officer) was at least $7,500.

The petitioner corporation did not engage in any business other than that of erecting, operating and selling the property mentioned.

The $10,000 salary voted to the petitioner's president on December 16, 1919, was credited to his account in reduction of his indebtedness to the petitioner corporation for money which had been advanced to him. No compensation had been paid or credited to him by the corporation at any time previously, although he had been the sole active officer of the corporation, and as such had had charge of the purchase of the land, the securing of the mortgage from the Metropolitan Life Insurance Co. (as a part of which transaction he gave his personal bond), the erection of the building, the securing of tenants, and, finally, the sale of the property in 1919.

The Commissioner, in determining the proposed deficiency, allowed to the petitioner as a deduction $2,500 of the compensation of Irving Judis, and disallowed the remaining $7,500.

OPINION.

GREEN: Two issues are presented in this appeal: (1) Whether the respondent erred in determining that the second mortgage here in question had a fair market value equal to its face value of $47,500 at the time it was received as a part of the consideration for a sale by the petitioner in 1919, instead of $32,500 as claimed by the petitioner; and (2) whether the respondent erred in diallowing as a deduction from gross income in 1919, $7,500 of the $10,000 salary voted the

petitioner's president in 1919, and refusing to allow the said $7,500 either as a deduction for compensation or as an additional cost of the building which was erected in 1915 and 1916 and sold in 1919. The two issues will be taken up in order.

The petitioner corporation sold its property in June, 1919, subject to first mortgage of $210,000, and received in exchange $40,000 in cash and a purchase-money second mortgage on the same property for $47,500. The second mortgage bore interest at the rate of 6 per cent per annum and was to fall due in 5 years (on June 1, 1924), with installments of $2,500 semiannually on account.

Section 202 of the Revenue Act of 1918 provides in part:

(a) That for the purpose of ascertaining gain derived or loss sustained from the sale or other disposition of property, real, personal, or mixed, the basis shall be—

(1) In the case of property acquired before March 1, 1913, the fair market price or value of such property as of that date; and

(2) In the case of property acquired on or after that date, the cost thereof;
* * *

(b) When property is exchanged for other property, the property received in exchange shall for the purpose of determining gain or loss be treated as the equivalent of cash to the amount of its fair market value, if any; * * *

The respondent found the fair market value of the second mortgage received in exchange to be equal to its face value, or $47,500 at the time it was received. The petitioner in its claim before the Commissioner contended for a value of $32,500. We find from the evidence that the value was not in excess of $32,500.

The petitioner produced two witnesses whose testimony is substantially to the same effect, namely, that the normal rate of discount on this class of mortgages was from 4 per cent to 6 per cent per annum in addition to the regular rate of interest, depending on the quality of the mortgage; that, therefore, when a mortgage had 5 years to run, it was customary in normal times to deduct a bonus or discount of from 20 per cent to 30 per cent from the face; that first and second mortgages were seldom made for amounts in excess of 66 per cent and 80 per cent, respectively, of the value of the property; that the market for second mortgages in 1919 was very precarious and uncertain; that where the equity in the property was small, discounts ran up as high as 50 per cent; and that due to the first mortgage being exceptionally large (as evidenced by the necessity for a bonus of approximately $18,500), and maturing before the due date of the second mortgage (thereby bringing in the hazard of refinancing the first mortgage at a possible loss), and the greater part of the second mortgage not being due until 1924, it was their opinion that the second mortgage here in question was a " poor mortgage."

# 464    7 U. S. BOARD OF TAX APPEALS REPORTS.    (460)

One witness placed a value on it at the time received of $29,000 and the other witness testified to $30,000. The Commissioner introduced no evidence of value.

The petitioner's president testified that he had made many attempts in 1919 to sell the said second mortgage, but could find no purchasers except at a very heavy discount. The petitioner assigned the mortgage to Mary Judis in consideration of $30,000 after it had been reduced to $45,000.

From all the evidence we find the second mortgage here in question had a fair market value of $32,500 at the time it was received by the petitioner in 1919.

As set out in the findings of fact, the minutes of the petitioner show that " the salary of the president for the year 1919 was fixed at the sum of $10,000." The petitioner deducted this amount as salary on its 1919 income-tax return. The Commissioner determined that the amount of $10,000 exceeded " a reasonable allowance for salaries or other compensation for personal services actually rendered," within the meaning of section 234(a)(1) of the Revenue Act of 1918, and accordingly disallowed $7,500 of the $10,000 as being unreasonable. Considering only the question of reasonableness of the president's salary for the year 1919, the Commissioner's action would have to be sustained on the ground that the petitioner did not offer any evidence as to what might be considered a reasonable compensation for services rendered by its president during 1919. But the petitioner contends as an alternative that the $7,500 should be allowed as a part of the cost of the property sold.

The evidence offered by the petitioner on this point shows that Irving Judis was an experienced builder; that during 1915 and 1916 he acted as the general contractor in actively superintending the erection of the building; that such services alone (exclusive of his services as an officer) were worth at least $7,500; and that he received no compensation therefor. The $10,000 credited to his account in 1919 was for salary for the year 1919.

There is nothing in the record to indicate that the petitioner had agreed to pay or contemplated paying Irving Judis any amount as compensation for his services rendered in supervising construction of the building. The corporate minutes expressly provide that the amount of $10,000 is salary for the year 1919, and, while it is undoubtedly true that the services rendered were of substantial value to the petitioner, still we find no justification for a conclusion on our part that the salary voted was for any purpose other than that stated in the resolution. This being true, we not only hold that the Commissioner's action in disallowing as a deduction any amount in excess of $2,500 was entirely correct, but we further hold that salaries

voted and paid for the year 1919 may not be included as an item of cost of construction of a building erected in 1915 and 1916.

> *Judgment will be entered after 15 days' notice, under Rule 50.*

LITTLETON did not participate.